**YARBRO CONSTRUCTION COMPANY, and Commercial Standard Fire and Marine Insurance Company, Petitioners,**

v.

**Alford Lee GRIFFITH and the State Industrial Court, Respondents.**

No. 46556.

Supreme Court of Oklahoma.

March 26, 1974.

Rinehart, Cooper & Stewart, Oklahoma City, for petitioners.

Guy A. Secor, Oklahoma City, for respondents.

SIMMS, Justice:

Respondent, hereafter claimant, suffered accidental injury while engaged in covered employment with petitioners. A trial judge entered an order awarding compensation for permanent partial disability (50%) to body as a whole, and 55 weeks temporary total compensation. This award was affirmed on en banc appeal and petitioners perfected this proceeding for review.

On February 26, 1970, claimant, employed as a laborer, fell ten feet from a stack of lumber onto a heavy timber injuring his chest and right rib cage. When taken to a clinic, claimant was examined by Dr. R. for possible fracture of 5th and 7th ribs on right lateral side, advised there

were cracked ribs which were bandaged, given pain pills, and sent home to rest. Because of swelling and pain in the side and back, claimant returned to Dr. R. and after examination was referred to a specialist, Dr. S. This physician removed the bandage, and took x-rays, and advised there were bruised rib tissues and claimant should remain off work a few days.

After examination March 3rd, this physician reported claimant had suffered soft tissue injury of right lateral chest wall resulting in temporary disability to date, but with minimal medication should be able to resume full activity in near future without any permanent disability from injury.

Although suffering pain in rib area, lower body, and back, claimant returned to employment March 12th and continued work as a laborer. Claimant was seen by Dr. R. on May 11th, and referred to Dr. Sm., a thoracic specialist, who ascertained existence of tumor of anterior right rib. The physician reported the tumor unquestionably antedated injury. Claimant was admitted to Deaconess Hospital in May for excision of tumor on anterior right 8th rib, diagnosed as solitary plasmacytoma. After discharge from hospital, claimant was seen by Dr. Sm., pain pills were prescribed, claimant advised to remain at home and referred to Dr. B. who, with Dr. Suk., administered three weeks course of cobalt treatment. Thereafter, claimant was checked regularly by Dr. Sm., advised not to lift anything, and remained off work seven months. Still suffering pain in rib area and back, and unable to sleep, claimant attempted to resume work for petitioner but was laid off.

In March, 1971, claimant began work for a Norman contractor as a cement finisher, but was unable to stand erect because of pain and had to work crawling on his knees. About May 15th, claimant sustained a knee injury, which required treatment and drainage of fluid on three occasions in a Norman Clinic, but recovered and returned to work. In September, claimant fell about 10 feet, striking his back side and hip, and was examined but not treated by a specialist. Claimant left this contractor's employe, returned to Dr. Sm. and was sent to Dr. B., who hospitalized claimant on September 28th for further cobalt treatments.

Claimant again was hospitalized November 26th for intensive treatment and surgical procedures until discharged January 21, 1972, but continued under observation as an outpatient. During hospitalization, and at various times thereafter, claimant was examined or treated by numerous specialists. After operative biopsy, two consultants reported claimant was suffering from myeloma in left femur and probably tumor of lumbrosacial plexus, and additional radiation therapy had been administered. Dr. B.'s report (May 23, 1972) disclosed the above matters, and also stated claimant continued to experience considerable pain and weakness in left leg, severely limiting ambulation, and was under cyclic chemotherapy. The doctor evaluated claimant's condition as progressively deteriorating, but stated there was no relationship between myeloma and physical trauma.

Deposition testimony of Dr. C., specialist in oncology and chemotherapy, was introduced by respondents. The physician's testimony was elicited in answering questions concerning written hypothetical facts relating to circumstances surrounding claimant's injury, medical history and prognosis. The doctor stated the tumor excised from the 8th rib antedated traumatic injury. The doctor did not believe multiple myeloma was caused by on the job injury in February, 1970, although cause of multiple myeloma is unknown. Whether the condition could be spread or aggravated by trauma is not known.

Counsel predicated some cross-examination, relative to relationship between trauma and causes, upon authoritative text statement that a question arises in every case whether injury was superimposed upon existent tumor, or simply provides stimulus for onset of malignancy. The text stated there were grounds for accepting ei-

ther conclusion, but acknowledged relationship between trauma and tumor growth must be accepted since, in a majority of cases, injuries reported preceded the disease. Petitioner's witness disagreed with the conclusion, although admitting this was a controversial area, and the absence of convincing evidence to establish either hypothesis. Summation of this physician's testimony was that claimant's tumor antedated injury, and no reasons are known for dormancy or growth of such tumors, and consensus is that original relationship between trauma and development of a tumor is unproven.

Claimant's medical evidence included Dr. R. F. R.'s written report answering written hypothetical questions based upon claimant's injury, ensuing clinical history, and physical condition at date of interrogatory (Feb. 28, 1972). Based upon these facts, this physician was of the opinion dormant plasmacytes present at site of injury were activated and disseminated by trauma and produced tumor which later was excised. Cells disseminated by injury laid dormant in additional areas, and in 1971 sufficient progression occurred from cells disseminated from original lesion that resided in left hip and further plasmacytoma was formed. This second lesion, or tumor, was related to initial injury. Permanent partial disability of 50% to body as a whole resulted from spread of tumor cells from 1970 injury. The doctor stated:

"\* \* \* this man had an injury in February, 1970, and that a plasmacytoma developed in the region of this injury which was removed in May, 1970, and that later in 1971, another lesion composed of plasmacytes was discovered at a distant site, it is my opinion that this man now has multiple myeloma which involves a considerably worse prognosis that a solitary plasmacytoma. It is my opinion that the injury aggravated the tissues causing more rapid development of the initial lesion and causing dissemination into other areas of the body by way of the blood stream and other avenues resulting in multiple implantations and that as of now, one of these areas has produced clinical symptoms. With the appearance of a second lesion, the prognosis involves additional lesions which may be expected to appear in the future. Although I feel that the appearance of additional lesions is a foregone conclusion since they have not, as of this time, given rise to clinical indication, I would base my present estimate of partial permanent disability on the presence of the two lesions which have appeared. It is my impression that the greatest portion of his disability is now a result of the lesion in the hip and my estimate of permanent partial disability is based on his present condition as indicated from the hypothetical question."

The foregoing report was attached to this doctor's deposition of March 14, 1972, which reflected prior examination of exhibits and reports detailing claimant's medical history following injury. Subsequent to answering written interrogatories the doctor examined claimant and reviewed records of hospitalization. As a result this review and examination of the doctor's opinion and findings remained as detailed in written answers.

The doctor also examined claimant further and reviewed further medical reports from other physicians, and on June 1, 1972 rendered a supplemental report. This report restated and confirmed evaluation furnished earlier concerning nature, cause, and extent of disability. The report was attached to a further deposition taken August 15, 1972. On this hearing, the doctor testified that within his knowledge claimant was temporarily totally disabled only during periods actually hospitalized, although there may have been prior total disability. However, the doctor continued, claimant was totally disabled when examined in June and remained so on the deposition date, but physical capabilities would stabilize soon, and need for total temporary compensation would end. The physician was explicit in his testimony that trauma

could aggravate or cause a multiple myeloma condition to spread.

■ Two contentions are advanced as grounds for vacating the order reviewed. Each is based entirely upon argument relating to fact questions concerning medical evidence upon which this award was based. When medical testimony in a workmen's compensation case is in dispute, conflicting evidence will not be weighed on review to determine where the preponderance lies. Cassidy v. Noe, Okl., 471 P.2d 459; Blue Bell, Inc. v. Owens, Okl., 463 P.2d 969.

Petitioner acknowledges existence of this rule, but seeks to avoid application here upon grounds the trial court's determination was based upon incompetent medical evidence. The argument is that claimant's medical evidence was supplied by a physician who was not qualified or competent in this particular field, was based upon abstract opinions and conclusions and not upon complete history and treatment. By comparison of opinion and conclusions of claimant's medical witness against conclusions of petitioner's "highly qualified and capable specialists in a field which is highly technical", petitioners irrevocably conclude this Court must accord greater weight to qualification and training of witnesses, i. e., those of petitioners, in order to preserve the judicial system.

■ This argument often has been advanced and answered. In Drinkwater v. Orkin Exterminating Co., Okl., 361 P.2d 834, 835, we said:

"The State Industrial Court may accept an estimate of compensable disability given by any qualified physician. * * * The testimony of a doctor who has a limited knowledge and experience in a given field of medicine is not subject to rejection as a matter of law merely because it is opposed by that of a specialist. If the medical witness possesses sufficient familiarity with the principal subject-matter under inquiry to formulate an opinion, his testimony is competent. * * *"

■ Petitioners also insist claimant's medical testimony has no probative value because based upon incomplete history and an abstract opinion. This argument merits little discussion. Few cases reflect medical evidence from a non-treating physician predicated upon as complete review of the claimant's medical history and treatment record, and bolstered by independent x-ray and physical examination, as the present case. It is not absolutely essential history given by a medical witness include every fact the evidence tends to prove. Petitioners fail to point out wherein the history received by Dr. R. F. R., composed principally of claimant's complete medical history, was false, inaccurate and incomplete. Nothing appears in the record which tends to establish the history received by claimant's doctor was incorrect. The court en banc upon appeal apparently were unimpressed by this argument. It is unpersuasive in this review. Big Four Cold Storage v. Shanks, Okl., 411 P.2d 546.

■ Petitioners further contend that an award of 55 weeks temporary total compensation is unsupported by competent medical evidence. Principal argument is that Dr. R. F. R. gave no opinion as to temporary disability other than for periods of hospitalization. This statement is only partially correct. Claimant was temporarily totally disabled when examined June 26, 1972, and remained disabled when last examined August 15, 1972. Claimant was temporarily totally disabled by actual hospitalization at least 125 days, was unable to work for 7 months following discharge from hospitalization, and disability continued on date of last examination. Simple calculation discloses award of temporary total compensation is proper, even absent evidence showing temporary disability following initial surgery, and during periods claimant was receiving outpatient treatment.

Award sustained.

All the Justices concur.