**DAYTON TIRE & RUBBER COMPANY, and Liberty Mutual Insurance Company, Petitioners,**

v.

**Isaac VIRES, Jr., and the State Industrial Court, State of Oklahoma, Respondents.**

**No. 47472.**

Supreme Court of Oklahoma.

July 8, 1975.

Crowe & Dasovich, by W. Jeffery Dasovich, Oklahoma City, for petitioners.

Jack E. Gray, Oklahoma City, for respondents.

SIMMS, Justice:

Petitioners, hereafter called respondents, bring proceeding for review to vacate a trial judge's order, affirmed as modified on en banc appeal, awarding compensation for temporary total disability and permanent partial disability resulting from accidental injury from heart attack in course of covered employment. Alternatively, respondents ask remand of the cause for the purpose of determining amount of payments made under health and accident insurance plan for which respondents should receive credit against temporary total compensation paid to claimant.

Claim for compensation alleged disability resulting from heart injury due to strain in

course of hazardous employment. Respondents denied occurrence of any accidental injury within course of covered employment. Other issues raised by pleadings are not presented for review. At the first hearing, respondents stipulated as to hazardous nature of employment and applicable compensation rate. Matters hereafter summarized were disclosed by lay and professional testimony. Summation of medical evidence is amplified by reason of respondents' argument concerning evidentiary matters.

The 30 year old, handicapped claimant had no established history of cardiovascular difficulty. Injuries sustained in 1967 vehicle accident necessitated amputation of left leg above the knee, and required use of prosthetic device.

Respondent had employed claimant in October, 1970, following physical examination. When hired, claimant was warned no sympathy could be expected and continued employment depended upon ability to perform.

Claimant worked in "waste control", which involved collecting materials from other departments and re-working the material to salvage everything possible. This material was on spools, or in "books" or "mats" of varying (30–500 pounds) weights. Claimant picked up this material and loaded onto cutting table by hand. Admittedly, this was heavy work involving physical effort. Claimant also performed other strenuous tasks, including lifting and emptying heavy barrels of waste into a compactor. Ordinarily claimant began an eight hour shift at 7:00 A.M., but on numerous occasions worked three to four hours overtime prior to his regular shift. This included work in the curing room where it was extremely hot. On most occasions, there were no mechanical lifts or carriers furnished, and material had to be loaded and moved by hand.

The first episode of heart difficulty commenced prior to August, 1971. After working three to four hours claimant would suffer chest pains, sweating, aching in left arm and finger numbness, and pain would increase during work. Claimant would go home after the shift ended and remain quiet and rest in order to be able to return to the job. However, claimant did not report this to respondent for fear of losing the job.

Claimant suffered a recurrence which was not alleviated by resting during the night, and pain became so severe, his wife had claimant admitted to a Midwest City Hospital on August 1, 1971. After five days hospitalization, claimant was discharged, with condition diagnosed as possible inferoseptal and high lateral infarction. The attending physician (Dr. V.M.R.) discharged claimant with tentative diagnosis of bronchitis, although stating electrocardiographic evidence showed possible infarction.

Medical evidence reflected further hospitalization September 7, 1971. Electrocardiogram showed only a little questionable change since August 4, 1971, but chest pains continued. Claimant was discharged September 15th to continue heart medication, with diagnosis of possible myocardial infarction, although not proved by tests.

Claimant was again experiencing difficulty September 27th, and consulted (Dr. S.) his family physician. Upon advice of Dr. A.F.E., claimant was admitted to St. Anthony Hospital for treatment, and discharged October 1, 1971, under medication. Diagnosis was possible acute myocardial infarction, probable coronary atherosclerotic ischemic heart disease, and Type IV hyperlipiproteinemia. Claimant returned to work for light duty but was assigned his usual job. Hospital records disclose the report of heart study (EKG) by Dr. R. H. White showed claimant had probable old high lateral myocardial infarction and probable acute to moderately recent anterior myocardial infarction.

January 30, 1972, claimant was re-hospitalized for performance of coronary arteriorgraphy. Studies disclosed left anterior descending artery showed three areas of narrowing. Dr. A.F.E. reported claimant

tolerated procedure well, but after review of films with Dr. S., it was agreed claimant was not ready for aortal coronary bypass surgery. Claimant was discharged February 2, 1972, under added medication to improve ventricular and cardiac performance. Dr. Wm. S. Myers reported study showing anteroseptal myocardial infarction, age undetermined. Final diagnosis was coronary atherosclerotic ischemis heart disease, with possible old myocardial infarction and hypertension. Claimant resumed employment performing his usual job.

During work on April 6, 1972, other employees advised the foreman claimant was ill. Claimant was pale and sweating, appeared ill, and stated he was sick. The foreman assisted claimant to his feet and then to the dispensary, later learning claimant had been taken to Baptist Hospital. Emergency room examination (Dr. J. J.D.) was conducted following episode of left precordial pain, aggravated after beginning work. This report reflected earlier procedures and diagnosis by Dr. A.F. E., and stated EKG exhibited evidence of old anteroseptal and high lateral myocardial infarction. Claimant declined further hospitalization and was allowed to return home for rest under medication. Claimant did not improve, was unable to work, and thereafter remained at home under sedentary schedule.

On July 7, 1972, Dr. A.F.E. reported claimant disabled with indefinite prognosis for return to work, but later reported claimant would be able to resume job November 16, 1972. On December 4, 1972, the physician reported total permanent disability had resulted from coronary artery disease with angina and old myocardial infarction, hypertension, and type II hyperdipidemia.

Dr. R.F.R. examined claimant April 27, 1973, after securing history of symptoms and prior hospitalizations. Claimant was found to have suffered anterior and high level infarction, with additional evidence of ischemic heart disease. Distribution of infarcted areas suggested involvement of a least two major coronary arteries. Heavy activity to which claimant was subjected during work caused recurring pain from which definite evidence of infarction and ischemia developed. Excessive activity was precipitating factor in initial acute episode, as well as other episodes, and also the episode of April 6, 1972, which left claimant temporarily totally disabled. Absent election to undergo coronary surgery claimant would remain 75% disabled (for performance of ordinary labor) as result of accidental injury.

On deposition hearing this doctor was cross-examined extensively concerning basis for findings relative to injury and disability. The doctor unequivocally stated that unusual work activity resulted in claimant sustaining a coronary occlusion which produced myocardial infarction. Earlier episodes probably were ischemic, akin to anginal attacks since relieved by rest. Later episodes, however, were more than anginal since unrelieved by rest. Significant injury resulted to the heart muscle from reduced circulation, and the electrocardiogram confirmed injury to heart muscle and myocardial infarction which produced disability. The doctor declared job activities were related to claimant's heart condition and final disabling infarction.

The trial judge determined claimant's disability had resulted from physical changes and disease, and not from accidental personal injury received in course of covered employment. An order was entered denying claim for compensation and claimant appealed to State Industrial Court en banc.

On appeal, that order was vacated and the cause remanded to the trial judge, with directions to appoint an independent medical examiner to evaluate claimant's permanent partial disability. Pursuant to appointment, claimant was examined by Dr. P. for determination of extent of disability resulting from heart strain involved in episodes of August, 1971, and April–May, 1972.

Dr. P.'s evidence was introduced by written report and deposition evidence from respondents' cross-examination of the doctor. The report was based upon detailed history, physical examination, and laboratory and x-ray studies. The doctor found claimant's heart to be hypertensive in shape, with findings indicative of hypertensive changes and residuals of anterior wall myocardial infarction. Claimant was suffering two problems: (1) hypertensive cardiovascular disease; (2) arteriosclerotic cardiovascular disease with healed myocardial infarction. By reason of these problems, claimant had suffered 60% permanent partial disability to the body as a whole for performance of ordinary manual labor.

The trial judge entered an order finding claimant sustained accidental injury in course of covered employment, found amount of compensation due for temporary total disability, and awarded compensation for 60% permanent partial disability to the body as a whole. On en banc appeal, State Industrial Court modified this order by reduction of amount due for temporary total compensation, and affirmed the order as modified.

Initially, respondents contend claimant did not sustain injury arising out of and in course of employment, since there was no competent evidence indicating claimant sustained a heart injury. From this premise alternatively conclude: (a) if claimant sustained heart injury, no competent evidence shows a work related injury; (b) the only competent medical evidence established that claimant suffered atherosclerotic ischemic coronary artery disease with hypertension.

■ Argument offered as support for the asserted conclusions obviously rests upon respondents' interpretation as concerns weight and quality of the evidence. This position contravenes settled decisional law governing determination of cause and extent of disability by State Industrial Court, *Arnold v. J. F. Pritchard & Co.,* Okl., 399 P.2d 481 (1965). And, it is axio-matic that upon review of an order of that court the Supreme Court is not authorized to weigh evidence or determine preponderance thereof. The record is reviewed only to ascertain whether there is any reasonable competent evidence to support the finding reviewed. *Howey v. Babcock & Wilcox Co.,* Okl., 516 P.2d 821 (1973); *Yarbro Const. Co. v. Griffin,* Okl., 521 P. 2d 75 (1974).

A related argument insists, even if this be considered as a case involving heart strain, claimant's evidence failed to supply necessary evidentiary components. Respondents urge failure of claimant's evidence, to show specific activity at a specific time which produced symptons of heart injury provide grounds for vacating this award. From this, respondents ask this Court to declare a new rule governing requisite pattern of proof in heart related cases, as expressed in *Berryhill v. Prudential Premium Co.,* Okl., 394 P.2d 520 (1964), and earlier decisions.

Proposed extension of the rule would require showing strain incurred in work-related activity to be evidenced by objective findings concerning which expert medical men could not differ; and, objective findings must conclude "strain" directly resulting in heart disability. This proposal simply constitutes a request that we revert to the former rule, which required affirmative showing of uncommon strain or exertion in order to establish disability (or death) from heart attack.

■ Later, better reasoned decisions uniformly have declared unnecessary any requirement for showing heart attack resulted from a specific incident of unusual strain or exertion. *H. J. Jefferies Truck Line v. Grisham,* Okl., 397 P.2d 637 (1964); *Flint Const. Co. v. Downum,* Okl., 444 P.2d 200 (1968); *Black, Sivalls & Bryson v. Bass,* Okl., 506 P.2d 902 (1973); *Howey v. Babcock & Wilson Co., supra.* State Industrial Court was authorized to determine from expert medical testimony that claimant sustained accidental heart injury which resulted in permanent partial

disability. The court's finding is supported by reasonable competent evidence.

Other arguments tendered by respondents involve only evidentiary matters, and do not require separate discussion.

It is also contended, that even if this claim be held compensable the award of temporary total compensation, under the circumstances of this case, is contrary to 85 O.S.1971, §§ 41.1, 45. This assertion total disability, claimant received sick bene- arises from the fact that during temporary fit payments under a group coverage insurance policy provided by respondent without contribution from claimant. The group policy was written by a company other than the compensation carrier.

Section 41.1, supra, provides:

"In the event salary or any other remuneration is paid in lieu of temporary total compensation during the period of temporary total disability or for any other period of time, no respondent or insurance carrier shall be allowed to deduct from the amount of the award for permanent or partial permanent disability any amounts paid for temporary total disability, nor shall he be given credit for such additional payments on future temporary total disability, permanent partial disability, disfigurement, or any other compensation provided by the workmen's compensation law."

Respondent then asserts that § 41.1 does not preclude a direct credit for payments made under a health and accident policy for a disability. They further submit, however, that the statute does preclude deductions made from payments on permanent awards or future temporary awards.

We observe that the quoted statute concerns salary or other remuneration paid *in lieu* of compensation during temporary total disability. The specific provision of § 45, supra, prohibits consideration of *benefits, savings or insurance* of the insured employee in determining compensation payable.

Respondent relies, in part, on *Tidewater Associated Oil Co. v. Ale,* 191 Okl. 414, 130 P.2d 991 (1942), where we held in syllabus 2:

"Under 85 O.S. 1941, § 45, no benefits, savings or insurance of the injured employee shall be considered in determining the compensation or benefit to be paid under the Workmen's Compensation Act."

Respondent apparently reasons that because in *Tidewater, supra,* the policy was afforded by the joint efforts of the employer and employee and no credit was considered in determining the amount of compensation; in the instant case credit against the award should be given, since the policy was furnished wholly through the efforts of the employer.

Respondents also cite *Don Clawson Drilling Co. v. Finch,* Okl., 277 P.2d 127 (1955), as authority for payments made by the insurance carrier being credited as against the award. However, *Finch* is distinguishable from the instant case in that the compensation insurance carrier paid the injured employee the total temporary disability in excess of the amount the employee was entitled to recover for the disability. In other words, there the employer and his insurance carrier made compensation, i.e., salary, wage payments to the employee during a period of temporary total disability which were in excess of the amount the employee was entitled to recover for temporary total and permanent partial, thereby entitling the employer to credit against the award.

The health and accident policy under which payments were made to claimant in this case is not in evidence nor the terms thereof found in the record. By whatever name these payments might be called, no claim is made, and no evidence indicates, that payments to claimant during temporary total disability were in reality payments of compensation, or payments in lieu of compensation.

No case is cited in the briefs nor do we find any case in this jurisdiction dealing

with the question of whether payments under a health and accident policy provided exclusively by the employer should be credited against the award for temporary total disability.

However, in *Davies v. Carter Carburetor, Div. ACF Indus. Inc.,* Mo., 429 S.W.2d 738, 752 (1968), it was stated:

> "The employer takes the position that the claimant is not entitled to recover, and is estopped from proceeding under the Compensation Act, because in the beginning he received payment under a Health and Accident policy."

The Missouri Court rejected this argument.

The Supreme Court of North Carolina addressed the question in *Ashe, Employee v. Barnes, Employer,* 255 N.C. 310, 121 S. E.2d 549 (1961), holding that an employer was not entitled to credit on a workmen's compensation liability for the amount paid to an injured employee under a disability benefits policy taken out by the employer on employees and for which the employee made no premium payment.

Most persuasive is *Alabam Freight Lines v. Chateau,* 57 Ariz. 378, 114 P.2d 233, wherein it was held that the proceeds from an accident insurance policy would not be credited against an award in favor of the employee as compensation for his lost time, even though the employer paid all of the premiums for the insurance. The Arizona Court held:

> "There was no connection, as a matter of law, between the amount which he was entitled to under the accident policy and the amount which was due him as an award under the workmen's compensation law. By the terms of that award, (the employer) was required to pay a fixed sum for compensation, and also the necessary medical expenses. It was also provided that any sums which had been paid previously on either the compensation or the medical expenses might be

deducted from the award. All of the medical expenses having been paid by (the employer) under its contract with (the employee), the latter had no further claim under the award against (the employer) for medical expenses. But he did have a right to recover from (the employer) the award of compensation, for the amount paid him under his accident policy *was not, and could not be, a payment on the award. The one rested upon the workmen's compensation law and the other upon the contract between (the employer) and the insurance company for the benefit of (the employee)."*

Accord: *Butler v. Lee,* 97 Ga.App. 184, 102 S.E.2d 498, 499:

> "Payments to an employee under a company-owned health and accident policy, whether for the payment of medical bills or otherwise, are not deductible from an award under the Workmen's Compensation Act."

◼ Because the issue pertaining to payments under an accident and health policy being credited against a compensation award is not jurisdictional, whether or not the credit should be given becomes a question of fact. *Sinclair Prairie Oil Company v. Stevens,* 194 Okl. 109, 148 P.2d 176 (1944). We do not herein decide whether a claim of non-liability for temporary total compensation, by reason of prior payments under a sick and accident plan, or crediting said payments against a temporary total award, is an affirmative defense required to be presented by proper pleadings; nor do we pass upon the quantum or burden of proof regarding such an issue.

*Award sustained.*

WILLIAMS, C. J., and DAVISON, IRWIN, BERRY, LAVENDER, BARNES, SIMMS and DOOLIN, JJ., concur.

HODGES, V. C. J., concurs in part, dissents in part.